SC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Lawrence A. Martin, | ) | No. CV 1-08-01401-CKJ |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| James A. Yates, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Lawrence A. Martin, who is confined in the Pleasant Valley State Prison (PVSP) in Coalinga, California, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983.[1] (Doc.# 1.)  Plaintiff subsequently filed a "Supplemental Pleading" without seeking leave of Court.  (Doc.# 11.)  Because a plaintiff cannot supplement a complaint absent leave of court, Plaintiff's Supplemental Pleading, doc.# 11, will be ordered stricken. Fed.R.Civ.P. 15(d). The Court will order Defendants Roche, Lopez, Scott, Herrera, Hoyt, Ahlin, Igbinosa, and Alvarez to answer Plaintiff's claim of unconstitutional conditions of confinement and will dismiss the remaining claims and Defendants without prejudice.

## I.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

---

[1]  "Doc.#" refers to the docket number of filings in this case.

JDDL

1    § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

2    claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

3    be granted, or that seek monetary relief from a defendant who is immune from such relief.

4    28 U.S.C. § 1915A(b)(1), (2).

5        A pleading must contain a "short and plain statement of the claim *showing* that the

6    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

7    demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

8    unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

9    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

10   statements, do not suffice."  Id.

11       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

12   claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly,

13   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

14   that allows the court to draw the reasonable inference that the defendant is liable for the

15   misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for

16   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

17   experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual

18   allegations may be consistent with a constitutional claim, a court must assess whether there

19   are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

20   **II.    Complaint**

21       Plaintiff alleges unconstitutional conditions of confinement, discrimination based on

22   disability, and violation of 42 U.S.C. § 1985(3).  Plaintiff sues the following employees of

23   the California Department of Corrections and Rehabilitation (CDCR) at PVSP:  Warden

24   James Yates; Associate Warden Ahlin; Medical Director Igbinosa; Health Care Manager

25   Alvarez; CCII Medical Appeal Officer Herrera; Acting Associate Warden Hoyt; Corrections

26   Officers Lopez and Roche; physician, Dr. Coleman; and Sergeant Scott.  Plaintiff also sues

27   CDCR Chief Inmate Appeal Officer Grannis and Staff Manager Examiner Sullivan, both

JDDL    28                                                    - 2 -

1   located in Sacramento.  Plaintiff seeks declaratory, injunctive, compensatory, and punitive

2   relief.

3          Plaintiff alleges the following facts in his Complaint:   Plaintiff is permanently

4   mobility-impaired due to a spinal cord injury.  Prior to his transfer to PVSP, Plaintiff had

5   been designated a class member subject to the Armstrong Remedial Plan (ARP).[2]  Plaintiff

6   also had been designated as having a permanent disability impacting placement status

7   (DPM).  On October 10, 2006, Plaintiff was issued a comprehensive chrono for use of

8   Canadian crutches, to receive meals in his cell, assignment to a low tier and to a low bunk,

9   no ambulating greater than 25 feet without rest, and no lifting, stooping, or kneeling at any

10  time.  Plaintiff was also not to use a wheelchair due to the nature of his disability and he was

11  approved for the Disability Placement Program (DPP).  The comprehensive chrono also

12  stated that "'This chrono shall be honored as a permanent chrono at all institutions.'" (Doc.#

13  1 at 4.)   Plaintiff had documentation reflecting his DPP/DPM status, a chrono for cell

14  feeding, and copies of other medical documents reflecting his disability issued to him at

15  Lancaster.

16         On December 4, 2007, Plaintiff was transferred from Lancaster State Prison to PVSP.

17  While PVSP is a wheelchair-accessible facility, it is not a DPP facility.  When he arrived at

18  PVSP, Black inmates were locked down and were being cell-fed.  Corrections Officers Lopez

19  and Roche worked the day shift and were responsible for serving breakfasts with a sack

20  lunch to the locked-down inmates.  Due to the lockdown, Plaintiff initially received breakfast

21  and lunch in his cell.

22         On January 3, 2008, Plaintiff was interviewed by Dr. Coleman, the Facility Health

23  Practitioner at PVSP.  Dr. Coleman reviewed Plaintiff's medical records and told him she

24  _____

25     [2]  The Armstrong Remedial Plan refers to a remedial order issued in <u>Armstrong v. Davis</u>, No. CV94-2307-CW, by the District Court for the Northern District of California to

26  enjoin practices that discriminated against disabled inmates in California prisons.  <u>See generally</u> <u>Armstrong v. Davis</u>, 275 F.3d 849 (9th Cir. 2001); <u>Armstrong v. Wilson</u>, 124 F.3d

27  1019 (9th Cir. 1997) (affirming order requiring submission of a remedial plan for compliance by the CDCR with the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-34, and

28  the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794, in California prisons).

1    would *recommend* that all of his chronos be continued.  On January 16, 2008, Plaintiff

2    received a copy of "the chrono" denying cell-feeding absent more information to support the

3    request, which was dated January 14, 2008 from the MAR (Medical Authorization Review

4    Committee).  (Doc.# 1 at 3.)  Because Black inmates were still being cell-fed due to the

5    lockdown, Plaintiff continued to receive breakfast and lunch in his cell.

6         On February 10, 2008, the lockdown of Black inmates ended and they again began

7    going to the chow hall for breakfast and lunch.  Plaintiff asked Officers Lopez and Roche to

8    continue providing him these meals in his cell because he was unable to walk to the chow

9    hall due to his disabilities and the distance involved.[3]  Plaintiff also showed them the chronos

10   received at Lancaster that approved Plaintiff for cell feedings on a permanent basis.  Lopez

11   told Plaintiff that he had to have a chrono from PVSP authorizing cell feedings.  Lopez also

12   told Plaintiff that he needed "to get in a wheelchair or something to get to chow hall" because

13   Lopez and Roche would not honor chronos from other institutions.  (Id. at 4.)  Plaintiff's cell-

14   mate pointed out posters that referred to the Plata v. Davis class action settlement between

15   inmates and CDCR, which also indicated that medical chronos remained in effect after

16   transfers.[4]  (Id. at 6.)  Plaintiff told the officers that he was awaiting approval of cell-feedings

17   from Dr. Coleman and asked to have meals provided at his cell in the meantime because he

18   was unable to walk the distance to the chow hall.  They refused.

19        On February 18, 2008, Plaintiff filed a grievance and told Sergeant Scott that Lopez

20   and Roche had refused to cell-feed him and he was unable to walk the distance to the chow

21

22        [3] Plaintiff alleges that when cell-fed, a sack lunch would be delivered with breakfast
     in the morning.

23

24        [4] Plata v. Davis, No. CV01-01351-THE, is a class action filed in the Northern District
     of California concerning medical care and violations of the ADA and RA in California

25   prisons.  See Plata v. Davis, 329 F.3d 1101, 1104-1105 (9th Cir. 2003).  In this case, the
     parties stipulated that CDCR would implement health care services policies and procedures

26   "'designed to meet or exceed the minimum level of care necessary to fulfill the defendants'
     obligation to plaintiffs under the Eighth Amendment of the United States Constitution.'" Id.

27   at 1105.  Further, CDCR facilities became subject to a schedule of audits to determine

28   compliance with the policies and procedures and to provide access to information, housing,
     and staff and inmates.  Id.

1    hall.  Scott told Plaintiff that Lopez and Roche had correctly refused his request in the
2    absence of a chrono from PVSP and refused to authorize cell-feedings before a chrono from
3    PVSP medical staff issued.  Plaintiff contends that Scott had the authority to approve cell-
4    feeding.

5         On February 27, 2008, Medical Appeal Coordinator Herrera discussed Plaintiff's
6    appeal with him.  Plaintiff showed her his chronos and told her that he had not received
7    breakfast or lunch since February 9.  Herrera told Plaintiff she agreed that his chronos from
8    Lancaster should be honored, but that she did not have the authority to tell corrections
9    officers to cell-feed him.  She partially granted Plaintiff's appeal to the extent that Plaintiff
10   was scheduled to be seen by his primary care physician in March and otherwise denied the
11   appeal.  Plaintiff maintains that Herrera had the power to order that he be cell-fed pending
12   evaluation but refused to do so.

13        On February 28, Acting Associate Warden Hoyt and Associate Warden Ahlin
14   approved Herrera's partial grant of Plaintiff's appeal, i.e., to the extent of scheduling a
15   medical appointment in March, without acting on Plaintiff's claim that he had not received
16   breakfasts or lunches since early February.  Plaintiff contends they had the authority to
17   require that he be cell-fed pending further medical review.

18        On March 14, 2008, Plaintiff received a second chrono prepared by Dr. Coleman, but
19   it also did not specify cell-feeding for him.

20        On March 28, 2008, Institutional Medical Director Igbinosa and Health Care Manager
21   Alvarez granted Plaintiff's request for cell-feeding citing his "mobility impairment and
22   inability to walk the distance to chow hall."  (Doc.# 1 at 9.)  Plaintiff contends that Drs.
23   Igbinosa and Alvarez were responsible for the policies that resulted in the denial of
24   authorization to be cell-fed pending further medical evaluation, which resulted in Plaintiff
25   not receiving breakfasts or lunches for 47 consecutive days.

26        On May 12, 2008, Staff Supervisory Manager I Sullivan denied Plaintiff's third-level
27   administrative appeal on behalf of Grannis, stating that lower level staff had correctly refused
28   to cell-feed him where the "Chrono Committee" at PVSP had denied cell-feeding based on

1  allegedly insufficient documentation of medical need.  (Id. at 10-11.)  Plaintiff contends that

2  Sullivan and Grannis thereby participated in a cover-up of an underground policy.

3       Plaintiff claims that he did not receive breakfasts and lunches for 47 days, or until

4  March 28, 2008, when the MAR Committee approved a new chrono authorizing cell

5  feedings.  Plaintiff alleges that the Defendants acted with deliberate indifference to Plaintiff's

6  constitutional right to be provided basic necessities under the Eighth and Fourteenth

7  Amendments.  Plaintiff also asserts that Defendants discriminated against him based upon

8  his disability.  (Id. at 16-17.)  Plaintiff further alleges that Defendants violated his rights

9  under 42 U.S.C. § 1985(3).

10  **III.    Failure to State a Claim Under § 1985(3)**

11       Plaintiff seeks relief for violation of 42 U.S.C. § 1985(3).  To state a claim under

12  § 1985, a plaintiff must allege facts supporting that he suffered discrimination based upon

13  his race.  See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (§ 1985); Butler v. Elle, 281

14  F.3d 1014, 1028 (9th Cir. 2002) (§ 1985).  Plaintiff fails to allege facts to support any

15  discrimination against him based on his race.  He therefore fails to state a claim under

16  § 1985(3).

17  **VI.    Failure to State a Claim Under § 1983**

18       To state a claim under § 1983, a plaintiff must allege facts to support that (1) the

19  conduct about which he complains was committed by a person acting under the color of state

20  law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v.

21  Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, to state a valid constitutional

22  claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of

23  a particular defendant and he must allege an affirmative link between the injury and the

24  conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

25       **A.    Warden Yates**

26       Plaintiff sues PVSP Warden Yates.  Although Yates may properly be sued for

27  constitutional violations, Plaintiff fails to state a claim against him.  "A plaintiff must allege

28  facts, not simply conclusions, that show that an individual was personally involved in the

1  deprivation of his civil rights." <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998).

2  For an individual to be liable in his official capacity, a plaintiff must allege that the official

3  acted as a result of a policy, practice, or custom.  See <u>Cortez v. County of Los Angeles</u>, 294

4  F.3d 1186, 1188 (9th Cir. 2001).  Further, there is no *respondeat superior* liability under §

5  1983, so a defendant's position as the supervisor of a someone who allegedly violated a

6  plaintiff's constitutional rights does not make him liable.  <u>Monell v. Dep't of Soc. Servs.</u>, 436

7  U.S. 658, 691 (1978); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor in

8  his individual capacity, "is only liable for constitutional violations of his subordinates if the

9  supervisor participated in or directed the violations, or knew of the violations and failed to

10  act to prevent them."  <u>Taylor</u>, 880 F.2d at 1045.

11  Plaintiff fails to allege facts to support that Yates enacted or enforced a policy,

12  custom, or practice that resulted in the denial of Plaintiff's constitutional rights.  Further,

13  Plaintiff has not alleged facts to support that Yates directly violated his constitutional rights

14  or to support that Yates was aware that Plaintiff's rights were being violated but failed to act.

15  Rather, Plaintiff predicates liability against Yates solely on *respondeat superior*.  That is not

16  sufficient to state a claim against him.  Accordingly, Yates will be dismissed.

17  **B.    Sullivan and Grannis**

18  Plaintiff alleges that Sullivan and Grannis violated his constitutional rights by failing

19  to come to his aid when he was denied cell-feedings in February and March, 2008.  Plaintiff

20  fails to allege any facts to support that either had any knowledge prior to April 8, 2008 that

21  Plaintiff had been denied cell-feeding and did not receive breakfasts or lunches as a

22  consequence.  That is, Plaintiff fails to allege facts to support that Sullivan or Grannis had

23  any involvement in the denial of Plaintiff's basic necessities, i.e., meals, until after Plaintiff

24  had again been authorized to be cell-fed.  Rather, Plaintiff makes only conclusory and vague

25  assertions that they knew or had constructive knowledge of the alleged violation.  That is not

26  sufficient to state a claim against them.  Accordingly, they will be dismissed.

27  /    /    /

28  /    /    /

1  **C.    Dr. Coleman**

2      Plaintiff alleges that Dr. Coleman failed to recommend cell-feedings for him in

3  January, 2008.  As a consequence, Plaintiff did not receive breakfasts or lunches for 47

4  consecutive days due to the absence of a cell-feeding chrono and his inability to walk to the

5  chow hall.  Plaintiff contends that Dr. Coleman violated his constitutional right to receive

6  basic necessities.

7      A convicted inmate's claims for unconstitutional conditions arises from the Eighth

8  Amendment prohibition against cruel and unusual punishment.  Bell v. Wolfish, 441 U.S.

9  520 (1979).  To state a claim for unconstitutional conditions, a plaintiff must allege an

10  objectively "sufficiently serious" deprivation that results in the denial of "the minimal

11  civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994);

12  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Allen v. Sakai, 48 F.3d 1082, 1087 (9th

13  Cir. 1994); see Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002).

14  These are "deprivations of essential food, medical care, or sanitation" or "other conditions

15  intolerable for prison confinement."  Rhodes v. Chapman, 452 U.S. 337, 348 (1981).  "'The

16  circumstances, nature, and duration of a deprivation of [] necessities must be considered in

17  determining whether a constitutional violation has occurred.'"  Hearns v. Terhune, 413 F.3d

18  1036, 1042 (9th Cir. 2005) (quoting Johnson, 217 F.3d at 731).

19      In addition to alleging facts to support that he is confined in conditions posing a

20  substantial risk of harm, a plaintiff must also allege facts to support that a defendant had a

21  "sufficiently culpable state of mind," i.e., that the official acted with deliberate indifference

22  to inmate health or safety.  Id.  In defining "deliberate indifference" in the prison context, the

23  Supreme Court has imposed a subjective test: "the official must both be aware of the facts

24  from which the inference could be drawn that a substantial risk of serious harm exists, and

25  he must also draw the inference."  Id. at 837.  A plaintiff must also allege how he was injured

26  by the alleged unconstitutional conditions.  See, e.g., Lewis v. Casey, 518 U.S. 343, 349

27  (1996) (doctrine of standing requires that claimant have suffered or will imminently suffer

28  actual harm); Caswell v. Calderon, 363 F.3d 832, 836 (9th Cir. 2004).

1   Plaintiff alleges that he did not receive breakfasts or lunches for 47 consecutive days.

2   LeMaire v. Maass, 121 F.3d 1444, 1456 (9th Cir. 1993) (allegations of insufficient calories

3   for a long period of time sufficient to state a claim).  Specifically, Plaintiff alleges that he is

4   (and was) permanently disabled and unable to walk to the chow hall at PVSP and that prison

5   staff refused to provide him breakfasts and lunches in his cell absent a chrono from PVSP.

6   He further alleges that he had previously been issued a chrono authorizing cell-feedings,

7   which was to remain in force notwithstanding subsequent prison transfers.  However, the

8   facts alleged by Plaintiff do not support that Coleman intentionally failed or refused to

9   recommend cell-feeding or facts to support that Coleman knew that the failure to recommend

10  cell-feeding would result in Plaintiff not receiving breakfasts and lunches for more than a

11  month.  Indeed, Plaintiff alleges that he showed her his previously-issued chronos, which

12  were to remain effective even after transfer.  Plaintiff therefore fails to set forth facts to

13  support that Dr. Coleman acted with deliberate indifference to his right to receive basic

14  necessities and she will be dismissed.

15  **IV.   Claims for Which an Answer Will be Required**

16      Plaintiff adequately alleges facts to state a claim for deliberate indifference to the

17  denial of basic necessities rendering his conditions of confinement unconstitutional against

18  Defendants Lopez, Roche, Scott, Herrera, Hoyt, Ahlin, Igbinosa, and Alvarez.  Plaintiff also

19  adequately alleges that these Defendants discriminated against him based on a disability.[5]

20  These Defendants will be required to respond Plaintiff's claims for denial of basic necessities

21  and discrimination based on disability.

22

23

24      [5]  Liberal notice pleading requires courts to look at the facts alleged to determine the
claims at issue.  Alvarez v. Hill, 518 F.3d 1151, 1157-58 (9th Cir. 2008).  Although Plaintiff

25  has not specifically alleged violation of the ADA in his Complaint, he alleges that he has a
disability and that he was denied an accommodation, specifically, the provision of meals in

26  his cell for 47 days.  Individuals, however, may only be sued under the ADA in their official,
rather than, their individual capacities.  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir.

27  2002) (plaintiff cannot sue state officials in their individual capacities to vindicate rights
created by Title II of the ADA).  Plaintiff adequately states a claim for violation of the ADA

28  against the Defendants in their official capacities.

1  **V.    Warnings**

2       **A.    Address Changes**

3       Plaintiff must file and serve a notice of a change of address in accordance with Rule

4  83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Plaintiff must not include

5  a motion for other relief with a notice of change of address.  Failure to comply may result in

6  dismissal of this action.

7       **B.    Copies**

8       Plaintiff must submit an additional copy of every filing for use by the Court.  <u>See</u>

9  LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further

10 notice to Plaintiff.

11      **C.    Possible Dismissal**

12      If Plaintiff fails to timely comply with every provision of this Order, including these

13 warnings, the Court may dismiss this action without further notice.  <u>See</u> <u>Ferdik v. Bonzelet</u>,

14 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to

15 comply with any order of the Court).

16 **IT IS ORDERED:**

17      (1)    Plaintiff's Supplemental Pleading is **stricken**.  (Doc.# 11.)

18      (2)    Defendants Yates, Coleman, Grannis, and Sullivan are **dismissed** without

19 prejudice.

20      (3)    Defendants Roche, Lopez, Scott, Herrera, Hoyt, Ahlin, Igbinosa, and Alvarez

21 must answer the Complaint.

22      (4)    The Clerk of Court must send Plaintiff a service packet including the

23 Complaint (doc.# 1), this Order, a Notice of Submission of Documents form, an instruction

24 sheet, and copies of summons and USM-285 forms for Defendants Roche, Lopez, Scott,

25 Herrera, Hoyt, Ahlin, Igbinosa, and Alvarez.

26      (5)    Within **30 days** of the date of filing of this Order, Plaintiff must complete and

27 return to the Clerk of Court the Notice of Submission of Documents.  Plaintiff must submit

28 with the Notice of Submission of Documents: a copy of the Complaint for each Defendant,

a copy of this Order for each Defendant, a completed summons for each Defendant, and a completed USM-285 for each Defendant.

(6)     Plaintiff must not attempt service on Defendants and must not request waiver of service.  Once the Clerk of Court has received the Notice of Submission of Documents and the required documents, the Court will direct the United States Marshal to seek waiver of service from each Defendant or serve each Defendant.

(7)     **If Plaintiff fails to return the Notice of Submission of Documents and the required documents within 30 days of the date of filing of this Order, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice.**  See **Fed. R. Civ. P. 41(b).**

DATED this 6th day of November, 2009.

_____
Cindy K. Jorgenson
United States District Judge