IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE A. MARTIN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JAMES A. YATES, *et al.*,<br><br>　　　　Defendant. | No. 1:08-CV-01401-CKJ<br><br>**ORDER** |

　　　　Pending before this Court is Defendants Herrera, Hoyt, Ahlin, and Igbinosa's Motion to Dismiss [Doc. 22]. For the reasons discussed below, Defendants' Motion to Dismiss is granted.

**I. MOTION TO DISMISS**

　　　　*A.　Factual Background*[1]

　　　　Plaintiff Lawrence A. Martin, who is confined in the Pleasant Valley State Prison (PVSP) in Coalinga, California, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. Pl.'s Compl. [Doc. 1]. In his complaint, Plaintiff alleges unconstitutional conditions of confinement, discrimination based on disability, and violation of 42 U.S.C. § 1985(3). *Id.*

---

　　　　[1] For purposes of a motion to dismiss for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).

1  The plaintiff brought his claim against several employees of the California Department of
2  Corrections and Rehabilitation (CDCR), including: Warden James Yates; Associate Warden
3  Ahlin; Medical Director Igbinosa; Health Care Manager Alvarez; CCII Medical Appeals
4  Officer Herrera; Acting Associate Warden Hoyt; Corrections Officers Lopez and Roche;
5  physician Dr. Coleman; and Segeant Scott. *Id.* Plaintiff also brought a claim against CDCR
6  Chief Inmate Appeals Officer Grannis and Staff Manager Executive Sullivan, both located
7  in Sacramento. *Id.* Defendants Yates, Sullivan, Grannis, and Coleman were subsequently
8  dismissed from the suit. Order 11/06/2009 [Doc. 12].

9  Plaintiff alleges that he is permanently mobility-impaired due to a spinal cord injury.
10 Pl.'s Compl. [Doc. 1] at 4. Prior to his transfer to PVSP, Plaintiff was designated as a class
11 member subject to the Armstrong Remedial Plan (ARP),[2] and was designated as having a
12 permanent disability impacting placement status (DPM). *Id.* at 5. On October 10, 2006,
13 Lancaster State Prison issued Plaintiff a comprehensive chrono. *Id.* The chrono stated,
14 "[t]his chrono shall be honored as a permanent chrono at all institutions." It also authorized
15 Plaintiff to receive meals in his cell, among several other items. *Id.* at 5, 7. In addition,
16 Plaintiff was not to use a wheelchair because of his disability. *Id.* at 5.

17 On December 4, 2007, Plaintiff was transferred from Lancaster to PVSP. Pl.'s Compl.
18 [Doc. 1] at 5. He brought his medical documentation issued by Lancaster, including records
19 that reflected his disability and the chrono for cell feeding. *Id.* When Plaintiff arrived at
20 PVSP, the black inmates were under lock-down, and thus were being cell-fed. *Id.* at 5-6.
21 Because of the lock-down, Plaintiff initially received breakfast and lunch in his cell.
22 Corrections Officers Lopez and Roche were responsible for serving those meals. *Id.* at 6.

---

[2] The Armstrong Remedial Plan refers to a remedial order issued in *Armstrong v. Davis*, No. CV94-2307-CW, by the District Court for the Northern District of California to enjoin practices that discriminated against disabled inmates in California Prisons. See generally *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) (affirming order requiring submission of a remedial plan for CDRC's compliance with both the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-34, as well as the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 749).

1    On January 3, 2008, PVSP's facility Health Practitioner, Dr. Coleman, interviewed
2 Plaintiff; and after reviewing his records, she stated that she would recommend that all his
3 chronos be continued. *Id.* On January 16, 2008, however, Plaintiff received a copy of "the
4 chrono," - dated January 14, 2008 from the Medical Authorization Review Committee
5 (MAR) - which denied cell-feeding absent more information to support his request. Pl.'s
6 Compl. [Doc. 1] at 6.  Because black inmates were still being cell-fed due to the lock-down,
7 Plaintiff continued to receive breakfast and lunch in his cell. *Id.* at 6.[3]

8    On February 10, 2008, the lock-down ended and the inmates returned to the chow hall
9 for breakfast and lunch.  *Id.* at 7.  Officers Lopez and Roche, however, refused Plaintiff's
10 request to continue to cell-feed Plaintiff. *Id.*  Lopez told Plaintiff that the officers would not
11 honor chronos from other institutions, and that Plaintiff needed a chrono from PVSP in order
12 to receive cell-feedings. *Id.*

13    On February 18, 2008, Plaintiff complained to Sergeant Scott, Officers Lopez and
14 Roche's supervisor, about not being cell fed. Pl.'s Compl. [Doc. 1] at 10.  Scott told Plaintiff
15 that Lopez and Roche had correctly refused Plaintiff's request in the absence of a chrono
16 from PVSP. *Id.*  Scott also refused to authorize cell-feedings before a chrono from PVSP
17 medical staff was issued. *Id.*  Plaintiff contends that Scott had the authority to approve cell-
18 feeding. *Id.*

19    On February 27, 2008, Medical Appeal Coordinator Herrera discussed Plaintiff's
20 appeal with him.  *Id.* at 11.  Plaintiff showed Herrera his chronos and told Herrera that he had
21 not received breakfast or lunch since February 9, 2008. Pl.'s Compl. [Doc. 1] at 11.  Herrera
22 stated that she agreed with Plaintiff that his Lancaster-issued chronos should be honored, but
23 that she did not have authority to tell corrections officers to cell-feed him. *Id.* She partially
24 granted Plaintiff's appeal to the extent that Plaintiff was scheduled to be seen by his primary

---

[3] Plaintiff alleges that when cell-fed, a sack lunch would be delivered with breakfast in the morning.

care physician in March, but otherwise denied the appeal. *Id.* Plaintiff maintains that Herrera had the power to order that he be cell-fed pending an evaluation, but that she refused. *Id.*

On February 28, 2008, Acting Associate Warden Hoyt and Associate Warden Ahlin approved Herrera's partial grant of Plaintiff's appeal, i.e. to the extent of scheduling a medical appointment in March, without acting on Plaintiff's claim that he had not received breakfasts or lunches since early February. *Id.* Plaintiff contends that they had authority to require that Plaintiff be cell-fed pending further medical review. Pl.'s Compl. [Doc. 1] at 11-12.

On March 14, 2008, Plaintiff received a second chrono prepared by Dr. Coleman, but this chrono did not specify cell-feeding for the Plaintiff. *Id.* at 12.

On March 28, 2008, Medical Director Igbinosa and Health Care Manager Alvarez granted Plaintiff's request for cell-feeding, citing his "mobility impairment and inability to walk the distance to the chow hall." *Id.* Plaintiff contends that Drs. Igbinosa and Alvarez were responsible for the policies that denied authorization of Plaintiff's cell-feeding pending further medical evaluation, which resulted in Plaintiff not receiving breakfasts or lunches for 47 consecutive days. *Id.* 12-13.

On May 12, 2008, Staff Supervisory Manager I Sullivan, on behalf of Grannis, denied Plaintiff's third-level administrative appeal. *Id.* at 13. He stated that lower level staff correctly refused to cell-feed Plaintiff because the "Chrono Committee" at PVSP denied Plaintiff's cell-feeding based on insufficient documentation of medical need. Pl.'s Compl. [Doc. 1] at 13-14. Plaintiff contends that Sullivan and Grannis are responsible for the harms caused to Plaintiff because they participated in a cover-up of an "underground policy" at PVSP. *Id.* at 14.

Plaintiff claims that he had not received breakfasts and lunches for 47 consecutive days when, on March 28, 2008, the Medical Authorization Review ("MAR") Committee finally approved a new chrono , which authorized cell feedings. *Id.* at 12. Plaintiff alleges that the Defendants acted with deliberate indifference to Plaintiff's constitutional right to be provided basic necessities under the Eighth and Fourteenth Amendments. *Id.* at 19-20.

Plaintiff also asserts that Defendants discriminated against him based upon his disability. *Id.* Finally, Plaintiff alleges that Defendants violated his rights under 42 U.S.C. § 1985(3). Pl.'s Compl. [Doc. 1] at 20-21.

This Court issued an Order on November 6, 2009 dismissing Defendants Yates, Coleman, Grannis, and Sullivan without prejudice; and further ordered that Defendants Roche, Lopez, Scott, Herrera, Hoyt, Ahlin, Igbinosa, and Alvarez answer Plaintiff's Complaint. Order 11/06/2009 [Doc. 12].

On April 10, 2010, Defendants filed their current Motion to Dismiss, asking that Defendants Herrera, Hoyt, Ahlin, and Igbinosa be dismissed from the action pursuant to Federal Rule of Civil Procedure 12(b)(6). Motion to Dismiss [Doc. 22].

  B. *Standard of Review*

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed.R.Civ.P.  Especially where the pleader is *pro se*, the pleading should be liberally construed in the interests of justice. *Johnson v. Reagan*, 524 F.2d 1123 (9th. Cir. 1975).  Nonetheless, a complaint must set forth a set of facts that serves to put defendants on notice as to the nature and basis of the claim(s).

Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted."  Rule 12(b)(6), Fed.R.Civ.P. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

When considering whether to dismiss under 12(b)(6), the Court must construe the complaint in the light most favorable to the nonmoving party; and, it must take all allegations

1  of material fact as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).

2    *C.*  *Analysis*

3    The issue presented is whether there is a separate constitutional right for a specific prison grievance procedure; and, if not, whether Defendants' Motion to Dismiss should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) - dismissing Defendants Herrera, Hoyt, Ahlin, and Igbinosa from the suit.

7    While case law establishes that there may be a First Amendment right to access the prison grievance procedure (e.g. by filing a complaint), it also states that there is no right to a specific procedure once the prisoner gains access.[4] *See e.g., Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2002).

11   The First Amendment guarantees "the right of the people [...] to petition the Government for a redress of grievances." U.S. Const. amend. I.  The United States Supreme Court reaffirmed this right, stating that "the right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985).  The right to petition the government includes a prisoner's right to file grievances within the prison system because "the 'government' to which the First Amendment guarantees a right of redress [...] includes [...] prison authorities." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  This right "precludes prison authorities from penalizing a prisoner for exercising those rights; [and] in some instances, prison authorities must even take affirmative steps to help prisoners exercise their rights." *Id.* at 1279 (citing *Bounds v. Smith*, 430 U.S. 817, 821-832, 97 S.Ct. 1491, 1494-1500, 52 L.Ed.2d 72 (1977) and *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993)).  Further, because a prisoner may be required to exhaust prison grievance procedures before seeking relief in federal court, his access to

---

[4] Case law addressing the issue of prison grievances uses the words "process" and "procedure" interchangeably, and sometimes in a conflicting manner. For the purposes of this order, this Court uses the word "procedure" to refer to the steps that an incarcerated individual may take to address his grievances within the prison system. Compare, e.g., *Mann v. Adams*, 855 F.2d 639, 640 (9th. Cir. 1998) with *Ramirez v. Galaza*, 334 F.3d 850, 853 (9th. Cir. 2002).

- 6 -

1 the grievance system is essential in order for the prisoner to exercise his right of meaningful
2 access to the courts under the Fourteenth Amendment. *Bounds*, 430 U.S. at 821-832, 97
3 S.Ct. at 1494-1500; *Bradley*, 64 F.3d at 1279.

4 Once the prisoner has access to the grievance procedure, however, he does not have
5 a separate constitutional right to *specific* procedures under the Fourteenth Amendment's Due
6 Process Clause. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v.
7 Adams*, 855 F.2d 639 (9th Cir. 1988)). In *Mann v. Adams*, the Ninth Circuit reasoned that
8 there is no "legitimate claim of entitlement to a grievance procedure." *Mann*, 855 F.2d at
9 640. First, "a State creates a protected liberty by placing substantive limitations on official
10 discretion." *Id*. at 640 (citing *Olim v. Wakinekona*, 461 U.S. 239, 249, 103 S.Ct. 1741, 1747,
11 75 L.Ed.2d 813 (1983)). Second, "to obtain a protectable right an individual must have 'a
12 legitimate claim of entitlement to it." *Mann* 855 F.2d at 640 (citing *Greenholtz v. Inmates of
13 Neb. Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979)).
14 However, "there is no legitimate claim of entitlement to a grievance procedure." *Mann* 855
15 F.2d at 640 (citing *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982) and *Azeez v.
16 DeRobertis*, 568 F.Supp 8, 11 (N.D.Ill. 1982)).

17 In *Shango v. Jurich*, the Seventh Circuit stated that a prisoner does not have a
18 legitimate claim to a specific grievance procedure because "a state created procedural right
19 is not itself a liberty interest within the meaning of the Fourteenth Amendment." *Shango v.
20 Jurich*, 681 F.2d at 1101. "Constitutionalizing every state procedural right would stand any
21 due process analysis on its head." *Id.* Rather than "identifying the substantive interest at
22 stake and then ascertaining what process is due, the process [would be] viewed as a
23 substantive end in itself." *Id.*

24 Because of the Ninth Circuit's rule that prison inmates are not entitled to specific
25 grievance procedure, judges in both the Eastern and Northern Districts of California have
26 further reasoned that it is also "impossible for due process to [be] violated by ignoring or

1 failing to properly process grievances."[5] *Thompson v. Mauck*, 2010 WL 1797394 (E.D.Cal) (citing *Smith v. Calderon*, 1999 WL 1051947 (N.D.Cal. 1999) (holding that failure to properly process grievances did not violate a constitutional right); *Cage v. Cambra*, 1996 WL 506863 (N.D.Cal. 1996) (holding that a prisoner did not have a constitutional claim for prison officials' failure to properly process grievances); *Murray v. Marshall*, 1994 WL 245967 (N.D.Cal 1994) (holding that a prisoner failed to state a claim under § 1983 for claiming that the prison grievance procedure failed to function properly)).

Plaintiff was clearly able to exercise his First Amendment right to petition the government when Officers Lopez and Roche refused to recognize his cell-feeding chrono. Because Plaintiff exercised this right, he gained access to the prison grievance procedure and came into contact with several individuals who operate within that system, including Defendants Herrera, Hoyt, Ahlin, and Igbinosa. Plaintiff asserts claims against these Defendants because he believes that they inadequately responded to his appeals either by not granting a cell-feeding chrono, or by refusing to use their authority to force the correction officers to recognize Plaintiff's chrono from Lancaster.

While the Defendants reviewed and responded to the Plaintiff's appeals in a manner with which the Plaintiff disagreed, this disagreement, without a right to specific procedure, does not enable the Plaintiff to bring a claim against these Defendants. A court may dismiss a complaint under Rule 12(b)(6) where a plaintiff has failed to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Construing the complaint in a light most favorable for Plaintiff, Plaintiff cannot state a claim for relief by arguing that Defendants Herrera, Hoyt, Ahlin, and Igbinosa engaged in misconduct within

---

[5] Although California district court cases are not binding on this Court, this Court finds that these cases are instructive regarding the issue of whether a prisoner has a constitutional claim for a specific grievance procedure.

1  the prison grievance procedure when Plaintiff does not have a right to a specific procedure
2  within that system.

3  Based upon the facts alleged in Plaintiff's complaint, Plaintiff was able to go through
4  the administrative appeals process within a reasonable period of time.  Plaintiff's Lancaster
5  chrono was observed between the time he arrived at PVSP (December 4, 2007) until at least
6  one month later when he was seen by the primary care physician at PVSP on January 3,
7  2008. Pl.'s Compl. [Doc. 1] at 6.   After the Medical Authorization Review Committee
8  denied Plaintiff's request for cell-feeding on January 16, 2008, and after Officers Lopez and
9  Roche refused to cell-feed Plaintiff on February 10, 2008, Plaintiff was able to file a
10 grievance - waiting no more than approximately two weeks between each step of the appeals
11 process. Plaintiff filed his grievance against Officers Lopez and Roche on February 10, 2008
12 and spoke with Sergeant Scott about the complaint on February 18, 2008; Plaintiff met with
13 Medical Appeals Coordinator Herrera to appeal the MAR's denial nine days later on
14 February 27, 2008; Acting Associate Warden Hoyt and Associate Warden Ahlin approved
15 Herrara's decision one day later on February 28, 2008; Plaintiff received a new chrono which
16 also did not specify cell-feedings fifteen days later on March 14, 2008; and Medical Director
17 Igbinosa and Health Care Manager Alvarez finally granted Plaintiff's request for cell feeding
18 fourteen days later on March 28, 2008.  *Id.* at 10-13. Forty-five days after Plaintiff was
19 approved for cell-feeding, Staff Supervisory Manager I Sullivan denied Plaintiff's third-level
20 administrative appeal, stating that all appropriate policies and procedures had been correctly
21 followed. *Id.* at 13-14.  This time line demonstrates that Plaintiff was able to exercise his
22 First Amendment Right to file a grievance, as well as go through the appeals process within
23 a reasonable amount of time.  These facts, coupled with case law which establishes that
24 Plaintiff has no separate constitutional right to a specific grievance procedure, support
25 dismissal of  Defendants Herrera, Hoyt, Ahlin, and Igbinosa pursuant to Rule 12(b)(6).

26 Finally, to address Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff
27 asks this Court to reconsider his argument of respondeat superior liability against these
28 Defendants. Opposition to Motion to Dismiss [Doc. 24]. However, to the extent that Plaintiff

1 asks this Court to reconsider his claim, Plaintiff's request is denied. This Court previously
2 stated that "there is no respondeat superior liability under § 1983, so a defendant's position
3 as the supervisor of [...] someone who allegedly violated a plaintiff's constitutional rights
4 does not make him liable." Order 11/06/2009 [Doc. 12] at 7 (citing *Monell v. Dept of Soc.*
5 *Servs*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) and *Taylor v. List*, 880
6 F.2d 1040, 1045 (9th. Cir. 1989)). Furthermore, "prison administrators [are] not licensed
7 medical practitioners [, and] [l]acking the requisite expertise, they must necessarily place
8 their confidence in the reports of prison doctors[.]" *McEachern v. Civiletti*, 502 F.Supp. 532
9 (N.D.Ill. 1980). As such, "[p]rison officials may reasonably rely on the judgment of medical
10 professionals" without risking liability under the eighth amendment." *Bond v. Aguinaldo*, 228
11 F.Supp.2d 918, 920 (N.D.Ill. 2002). Thus, the Defendants in this case reasonably relied on
12 the judgement of Dr. Coleman and the Medical Authorization Review Committee regarding
13 whether to allow Plaintiff to be cell-fed.[6]

14 Defendants Herrera, Hoyt, Ahlin, and Igbinosa are dismissed from this suit pursuant
15 to Federal Rule of Civil Procedure 12(b)(6). As discussed above, while there may be a First
16 Amendment right of access to the prison grievance procedure, there is no separate
17 constitutional right for a specific prison grievance procedure upon instigation of the process.
18 Defendants Herrera, Hoyt, Ahlin, and Igbinosa are individuals within the prison grievance

---

[6] Regarding Acting Associate Warden Hoyt and Associate Warden Ahlin, the Court has also considered their actions in light of Plaintiff's arguments referencing the injunctive relief required by the *Plata v. Davis* class action suit; however, the Court has determined that *Plata* does not apply in this case. *See e.g., Plata v. Davis*, 329 F.3d 1101 (9th Cir. 2003). California Department of Corrections and Rehabilitation's policy is that the chronos from an initial institution are effective *only* until the inmate is evaluated by the medical staff and physicians at a new institution. Pl.'s Compl. [Doc. 1] at 13-14. Thus, Plaintiff's chronos from Lancaster were effective at PVSP *only* until he was evaluated by his primary care physician on January 3, 2008. At this point, the Lancaster chrono was no longer effective. And because the Chrono Committee at PVSP denied Plaintiff's chrono for cell-feeding absent additional documentation to verify medical necessity, PVSP staff could not cell feed Plaintiff. *Id.* In this case, the Court finds that the policies established by *Plata* were not violated because Plaintiff was able to go through the administrative appeals process and was ultimately granted relief in a timely manner.

procedure, and were added to this action by the Plaintiff because Plaintiff disagreed with the way in which they reviewed and responded to his appeals. As such, he cannot state a claim of relief against these particular Defendants.

Accordingly, IT IS HEREBY ORDERED that Defendants Herrera, Hoyt, Ahlin, and Igbinosa are DISMISSED WITHOUT PREJUDICE.

DATED this 20th day of December, 2010.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge