1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

Lawrence A. Martin,       )    No. CV 1-08-01401-CKJ
                   )
       Plaintiff,      )    **ORDER**
                   )
vs.                  )
                   )
James A. Yates, et al.,     )
                   )
       Defendants.    )
                   )

Currently pending before the Court is Defendants' Motion for Summary Judgment [Doc. 46]. On December 22, 2011, the Court issued its Order [Doc. 48] resolving several pending motions and notified Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), of Defendants' pending Motion for Summary Judgment and his responsibility to respond. *See* Order 12/22/11 [Doc. 48] at 5-7. Plaintiff was granted additional time to respond to the pending motion, but has not filed anything further. *See* Order 3/9/2012 [Doc. 54].

## I.     FACTUAL BACKGROUND

Plaintiff Lawrence A. Martin, who is confined in the Pleasant Valley State Prison Complex ("PVSP") in Coalinga, California, filed this *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. *See* Pl.'s Compl. [Doc. 1]. Plaintiff's Complaint alleged unconstitutional conditions of confinement, discrimination based on disability, and violation of 42 U.S.C. § 1985(3). *Id.* The plaintiff brought his claim against several

1   employees of the California Department of Corrections and Rehabilitation (CDCR).  *Id.*

2   In its November 6, 2009 Screening Order [Doc. 12], the Court dismissed Defendants

3   Yates, Sullivan, Grannis, and Coleman. Order 11/06/2009 [Doc. 12].  Subsequently, on

4   December 20, 2010, the Court issued its Order [Doc. 30] granting Defendants Herrera,

5   Hoyt, Ahlin and Igbinosa's Motion to Dismiss [Doc. 22].  Defendants Roche, Lopez and

6   Scott are the remaining defendants in this litigation.[1]

7       Plaintiff alleges that he is permanently mobility-impaired due to a spinal cord

8   injury. Pl.'s Compl. [Doc. 1] at 4.  Prior to his transfer to PVSP, Plaintiff was designated

9   as a class member subject to the Armstrong Remedial Plan (ARP),[2] and was designated as

10  having a permanent disability impacting placement status (DPM).  *Id*. at 5.  On October

11  10, 2006, Lancaster State Prison issued Plaintiff a comprehensive chrono.  *Id*.  The

12  chrono stated, "[t]his chrono shall be honored as a permanent chrono at all institutions."

13  It also  authorized Plaintiff to receive meals in his cell, among several other items.  *Id.* at

14  5, 7.  In addition, Plaintiff was not to use a wheelchair because of his disability.  *Id.* at 5.

15      On December 4, 2007, Plaintiff was transferred from Lancaster to PVSP.  Pl.'s

16  Compl. [Doc. 1] at 5.  He brought his medical documentation issued by Lancaster,

17  including records that reflected his disability and the chrono for cell feeding.  *Id.*  Plaintiff

18  understood that healthcare at PVSP was responsible for writing the chrono for in-cell

19  feeding.  Defs.' Statement of Undisputed Facts in Support of Mot. for Summ. J. ("SOF")

20

21

22      [1] The current motion for summary judgment is filed on behalf of Defendants Lopez and
    Scott.  The summons upon Defendant Roche was returned unexecuted on January 25, 2010.  *See*

23  Process Receipt and Return [Doc. 16].

24      [2] The Armstrong Remedial Plan refers to a remedial order issued in *Armstrong v. Davis*, No.
    CV94-2307-CW, by the District Court for the Northern District of California to enjoin practices that

25  discriminated against disabled inmates in California Prisons. See generally *Armstrong v. Davis*, 275
    F.3d 849 (9th Cir. 2001); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) (affirming order

26  requiring submission of a remedial plan for CDRC's compliance with both the Americans with
    Disabilities Act (ADA), 42 U.S.C. §§ 12131-34, as well as the Rehabilitation Act of 1973 (RA), 29

27  U.S.C. § 749).

28
                                        - 2 -

1   [Doc. 46], Exh. 1, Lawrence A. Martin Depo. ("Martin Depo.") 8/26/11 at 32:1-10.

2   Plaintiff was seen within thirty (30) days of his transfer to PVSP by medical staff.  *Id.* at

3   32:15-21.

4     When Plaintiff arrived at PVSP, the black inmates were under lock-down, and thus

5   were being cell-fed. Pl.'s Compl. [Doc. 1] at 5-6. Because of the lock-down, Plaintiff

6   initially received breakfast and lunch in his cell.  *Id.*  Corrections Officers Lopez and

7   Roche were responsible for serving those meals.  *Id.* at 6.

8     On January 3, 2008, PVSP's facility Health Practitioner, Dr. Coleman, interviewed

9   Plaintiff; and after reviewing his records, she stated that she would recommend that all his

10   chronos be continued.  *Id.*  On January 16, 2008, however, Plaintiff received a copy of

11   "the chrono," - dated January 14, 2008 from the Medical Authorization Review

12   Committee (MAR) - which denied cell-feeding absent more information to support his

13   request. Pl.'s Compl. [Doc. 1] at 6.  Because black inmates were still being cell-fed due

14   to the lock-down, Plaintiff continued to receive breakfast and lunch in his cell.  *Id.* at 6.[3]

15     On February 10, 2008, the lock-down ended and the inmates returned to the chow

16   hall for breakfast and lunch.  *Id.* at 7.  Officers Lopez and Roche, however, refused

17   Plaintiff's request to continue to cell-feed Plaintiff. *Id.*  Lopez told Plaintiff that the

18   officers would not honor chronos from other institutions, and that Plaintiff needed a

19   chrono from PVSP in order to receive cell-feedings.[4]  *Id.*

20     On February 18, 2008, Plaintiff complained to Sergeant Scott, Officers Lopez and

21   Roche's supervisor, about not being cell fed. Pl.'s Compl. [Doc. 1] at 10.  Scott told

22   Plaintiff that Lopez and Roche had correctly refused Plaintiff's request in the absence of a

23   chrono from PVSP.  *Id.*  Scott also refused to authorize cell-feedings before a chrono

24   from PVSP medical staff was issued.  *Id.* Plaintiff contends that Sergeant Scott, a male,

25

26     [3]  Plaintiff alleges that when cell-fed, a sack lunch would be delivered with breakfast in the
27   morning.

28     [4]  Plaintiff's February 10, 2008 Reasonable Modification or Accommodation Request
indicates that Corrections Officer Sanchez declined to honor the previous chrono.

1    had the authority to approve cell-feeding.  *Id.*; *See also* Martin Depo. at 33:6-39:18.

2          The policies and procedures regarding requests for reasonable modifications,

3    related grievances, and definitions to describe impairments are found in Section 54100.32

4    of CDCR's Operations Manual ("DOM").[5]  Defs.' SOF [Doc. 42], Exh. 4, Decl. of S.

5    Lopez at ¶ 3.  When an inmate, such as Plaintiff, transfers to PVSP from another CDCR

6    facility, he is to undergo screening for an appropriate housing assignment upon arrival at

7    the institution's reception center.  *Id.* at ¶ 4.  CDCR's policy is that the chronos from an

8    initial institution are effective only until the inmate is evaluated by medical staff and his

9    primary care physicians at the new institution.[6]  *Id.* at ¶¶ 5-7.  Upon transfer, inmates are

10   to undergo medical screening with a primary care physician ("PCP") to evaluate their

11   medical needs.  *Id.*  If the PCP decides that certain modifications or accommodations are

12   necessary, s/he completes a Comprehensive Accommodation Chrono form (CDC 7410)

13   reflecting the inmates needs.  *Id.*

14         On February 27, 2008, Medical Appeal Coordinator Herrera discussed Plaintiff's

15   appeal with him.  *Id.* at 11.  Plaintiff showed Herrera his chronos and told Herrera that he

16   had not received breakfast or lunch since February 9, 2008.  Pl.'s Compl. [Doc. 1] at 11.

17   Herrera stated that she agreed with Plaintiff that his Lancaster-issued chronos should be

18   honored, but that she did not have authority to tell corrections officers to cell-feed him.

19

20         [5]Contrary to the declaration of Defendant Lopez, Section 54100.32 refers to Revisions
21   directing "[t]he Director, Division of Adult Institutions, in conjunction with the Director, Division
     of Adult Parole Operations, or designee shall ensure that the content of this Article is accurate and
22   current."   CDCR   Operations   Manual   (updated   through   January   1,   2012),
     http://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/DOM/DOM%202012/2012%20DO
23   M-Combined.pdf (last visited 8/1/2012).

24         [6]A review of the California Corrections Health Care Services Inmate Medical Services
25   Policies & Procedures ("IMSP&P") provides that "[l]icensed health care staff shall review the
     CDCR Form 7410, Comprehensive Accommodation Chrono, as applicable, and notify custody staff
26   of necessary accommodations.  The reasonable accommodations listed on the CDCR Form 7410
     shall remain in force at the receiving institution unless a physician at the receiving institution re-
27   evaluates the inmate-patient and determines that the accommodation is no longer required."
28   IMSP&P  Vol.  4,  Ch.  3  Section  III  (C)(2)  (January  2010),  available  at
     http://www.cphcs.ca.gov/docs/imspp/IMSPP-v04-ch03.pdf (last visited 8/1/2012).

1   *Id.* She partially granted Plaintiff's appeal to the extent that Plaintiff was scheduled to be

2   seen by his primary care physician in March, but otherwise denied the appeal. *Id.*

3   Plaintiff maintains that Herrera had the power to order that he be cell-fed pending an

4   evaluation, but that she refused. *Id.*

5        On February 28, 2008, Acting Associate Warden Hoyt and Associate Warden

6   Ahlin approved Herrera's partial grant of Plaintiff's appeal, i.e. to the extent of

7   scheduling a medical appointment in March, without acting on Plaintiff's claim that he

8   had not received breakfasts or lunches since early February.  *Id.* Plaintiff contends that

9   they had authority to require that Plaintiff be cell-fed pending further medical review.

10  Pl.'s Compl. [Doc. 1] at 11-12.

11       On March 14, 2008, Plaintiff received a second chrono prepared by Dr. Coleman,

12  but this chrono did not specify cell-feeding for the Plaintiff.  *Id.* at 12.

13       On March 28, 2008, Medical Director Igbinosa and Health Care Manager Alvarez

14  granted Plaintiff's request for cell-feeding, citing his "mobility impairment and inability

15  to walk the distance to the chow hall."  *Id.*  Plaintiff contends that Drs. Igbinosa and

16  Alvarez were responsible for the policies that denied authorization of Plaintiff's cell-

17  feeding pending further medical evaluation, which resulted in Plaintiff not receiving

18  breakfasts or lunches for 47 consecutive days.  *Id.* 12-13.

19       On May 12, 2008, Staff Supervisory Manager I Sullivan, on behalf of Grannis,

20  denied Plaintiff's third-level administrative appeal.  *Id.* at 13. He stated that lower level

21  staff correctly refused to cell-feed Plaintiff because the "Chrono Committee" at PVSP

22  denied Plaintiff's cell-feeding based on insufficient documentation of medical need. Pl.'s

23  Compl. [Doc. 1] at 13-14.  Plaintiff contends that Sullivan and Grannis are responsible for

24  the harms caused to Plaintiff because they  participated in a cover-up of an "underground

25  policy" at PVSP.  *Id.* at 14.

26       Plaintiff claims that he had not received breakfasts and lunches for 47 consecutive

27  days when, on March 28, 2008, the Medical Authorization Review ("MAR") Committee

28  finally approved a new chrono, which authorized cell feedings.  *Id.* at 12.  Plaintiff alleges

that the Defendants acted with deliberate indifference to Plaintiff's constitutional right to be provided basic necessities under the Eighth and Fourteenth Amendments. *Id.* at 19-20. Plaintiff also asserts that Defendants discriminated against him based upon his disability. *Id.* Finally, Plaintiff alleges that Defendants violated his rights under 42 U.S.C. § 1985(3). Pl.'s Compl. [Doc. 1] at 20-21.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id*. In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

## III.    ANALYSIS

There are three remaining Defendants in this cause of action. As such, the Court will address each of them in turn.

1

    *A.  Defendant Roche*

2

    Defendant Roche has never been served in this cause of action.  Rule 4(m), Federal

3

Rules of Civil Procedure, provides:

4

    If a defendant is not served within 120 days after the complaint is filed, the
    court – on motion or on its own after notice to the plaintiff – **must** dismiss

5

    the action without prejudice against that defendant or order that service be
    made within a specified time.

6

7

Fed. R. Civ. P. 4(m) (emphasis added).  Accordingly, Plaintiff is hereby notified that

8

Defendant Roche shall be dismissed without prejudice from this case within twenty-one

9

(21) days from the date of this Order.

10

    *B.  Defendant Scott's Identity*

11

    Defendant Scott avers that she is Judy Scott, and worked at PVSP as a

12

Correctional Counselor II Specialist in the ADA office from November 2007 through

13

May 2009.  In Defendant Scott's Answer [Doc. 31], however, he admits that he "was a

14

Sergeant and den[ies] the remaining allegations within the paragraph."  Defs. Lopez and

15

Scott's Answer to Pl.'s Compl. [Doc. 31] at ¶ 9.  Defendant Scott further admitted that he

16

"was a Sergeant at PVSP at all times relevant to this action and that he is being sued in

17

his individual capacity, and deny the remaining allegations[.]" *Id.* at ¶ 14.

18

    The Answer [Doc. 31] of Defendant Scott clearly confirms his identity as a male

19

and as a Sergeant.  Counsel cannot now try and convince the Court that Judy Scott is the

20

Defendant who was named in Plaintiff's Complaint [Doc. 1].  Clearly, she was not,

21

otherwise her Answer would have reflected a denial of the rank of sergeant and addressed

22

the male pronouns used to describe her.  The Court is troubled by the defense counsel's

23

apparent lack of diligence.  Accordingly, Defendant Scott's motion for summary

24

judgment is denied.

25

    *C.    Defendant Lopez*

26

    Under the Eighth Amendment, punishment may not be "barbarous" nor may it

27

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S.

28

337, 346 (1981).  Only deprivations denying the minimal civilized measure of life's

necessities are sufficiently grave for an Eighth Amendment violation. *Johnson v. Lewis*,

217 F.3d 726, 731 (9th Cir. 2000) (quotation omitted).  These are "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.

An Eighth Amendment claim also requires a sufficiently culpable state of mind by the defendants—deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 12 L.Ed.2d 811 (1994).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id*. at 837, 114 S.Ct. at 1979; *Gibson v. County of Washoe*, 290 F.3d 1175, 1187-88 (9th Cir. 2002).  To prove that officials knew of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842, 114 S.Ct. at 1981; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).  Deliberate indifference is something more than mere negligence but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 835).

### 1.    Defendant Lopez's Contentions

When Plaintiff arrived at PVSP, the black inmates were under lock-down, and thus were being cell-fed. Pl.'s Compl. [Doc. 1] at 5-6; Defs.' Mot. for Summ. J. [Doc. 46] at 11. Because of the lock-down, Plaintiff initially received breakfast and lunch in his cell.   Pl.'s Compl. [Doc. 1] at 5-6.

Defendant Lopez asserts that he had no knowledge regarding how long Plaintiff would be cell-fed due to the lock down, when the lock down would end, or how long the process of obtaining a PVSP chrono for cell-feeding would take. Defs.' Mot. for Summ. J. [Doc. 46] at 11.  Defendant Lopez "explained to Plaintiff that he was not able to honor an invalid chrono from another institution, and he advised Plaintiff that he needed a chrono from PVSP medical staff in order to receive cell feedings." *Id.*

1                2.      Analysis

2          Defendant Lopez is entitled to summary judgment on the claim.  The Court finds that

3    the failure to cell feed Plaintiff presents a sufficiently serious risk of harm to constitute an

4    Eighth Amendment violation.  *Farmer*, 511 U.S. at 832.  In light of the circumstances

5    surrounding this failure, however, Defendant Lopez did not act "with a sufficiently culpable

6    state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991);

7    *see also Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  Further, given Plaintiff's

8    failure to present any evidence, the Court cannot discern a triable issue of fact.

9          When Plaintiff was initially transferred to PVSP, he was cell fed due to the lock down.

10   Plaintiff testified that he saw Dr. Coleman within thirty (30) days of his transfer.  Depo. of

11   Lawrence Martin 8/26/2011 [Doc. 46-2] at 32:15-21.  Plaintiff further testified that he did

12   not discuss the need for cell-feeding with her because "it didn't enter [his] mind."  *Id.* at

13   32:22-33:5.  Once the lock down ended, Defendant Lopez followed CDCR policy and

14   honored the chrono issued by PVSP, which did not include cell feeding.  Defendant Lopez's

15   actions do not suggest a sufficiently culpable state of mind to support a finding of deliberate

16   indifference.  Defendant Lopez is entitled to summary judgment.

17         Accordingly, IT IS HEREBY ORDERED that:

18         1)      Defendant Roche shall be dismissed without prejudice from this case within

19   twenty-one (21) days from the date of this Order for failure to serve.

20         2)      Defendants' Motion for Summary Judgment [Doc. 46] is GRANTED IN

21   PART and DENIED IN PART.  Summary Judgment is granted in favor of Defendant

22   Lopez.

23         3)      The deadline for Defendant Scott to file a motion for summary judgment

24   shall be extended until **September 12, 2012**.  Plaintiff may respond **on or before**

25   **September 21, 2012**.

26         DATED this 28th day of August, 2012.

27   _____

28                    Cindy K. Jorgenson
                 United States District Judge